## WOODWARD v. LONGINO & COLLINS, Inc.
### No. 14586.

Court of Appeal of Louisiana. Orleans.
June 28, 1934.

Adam H. Harper, of New Orleans, for appellant.

Edward Rightor and W. H. Sellers, both of New Orleans, for appellee.

WESTERFIELD, Judge.

The question presented by this appeal is whether the plaintiff, a negro fireman, is af-flicted with hysterical paralysis in his right arm caused by a burn of his face, arm, and body, admittedly received in the course of his employment. Plaintiff claims 250 weeks' compensation under the Workmen's Compensation Law, and the defendant that no compensation beyond the 8 weeks already paid him for disabilities directly due to the accident should be allowed, for the reason that he is not really ill, but shamming; not a sufferer, but a malingerer.

During the trial of the case, after four medical experts had evenly divided in the expression of their opinion concerning the sincerity of the plaintiff, the court, on motion of defendant, appointed a fifth expert, Dr. L. L. Cazenavette, who, after an examination of the plaintiff, presented the following report:

"My Dear Judge Byrnes:

"In conformity with your request of October 25th, to examine one Barber Woodward, and make a report of my findings, I wish to advise that said Barber Woodward was examined by me at my office, on the following dates: October 26th, 28th, 31st, November 2nd, and 8th, 1932.

"His complaints consist of a total disability of the upper right extremity, accompanied by complete loss of sensibility. He attributes the condition of this member to the result of an accident as of May 11th, 1932, while at work as a fireman in the employ of Longino & Collins.

"During the course of my examination, I took into consideration his version of the accident, and its consequences. I made repeated Neurological examinations and applied several tests for the purpose of determining the existence or non-existence of injury or disease of the Nervous system, capable of explaining his present condition.

"As a result of these examinations and tests, I found no evidence of either organic or functional disorders of the Nervous System, including Hysteria, Traumatic Neurosis, but have had, on the other hand, positive evidence of his ability to move the member and also to appreciate sensation thereon. I, therefore, conclude that Barber Woodward is in no way disabled, having no affection of the Nervous System, of either an organic or functional type, and that his complaints are an attempt at willful deception.

"Very truly yours,
"L. L. Cazenavette, M. D."

The evidence of this last expert whom the court had appointed apparently turned the

scales in defendant's favor, and judgment was rendered to that effect.

The case obviously depends upon the appreciation to be given the medical testimony. Hysterical paralysis is, we learn from this record, a recognized pathological condition known as "physic-monoplegia." The patient suffers from a belief in the disease rather than from the disease itself, but the same effect is produced as that caused by actual paralysis of the nerves and muscles. Plaintiff claimed to be afflicted with this malady in his right arm, hand, and shoulder, with the loss of all sensation and considerable movement in the affected member.

Drs. E. G. Warner and Edward Maurer, testifying on behalf of plaintiff, expressed the opinion that the plaintiff was sincere after having conducted a number of tests such as the pricking of the flesh with pins and application of electricity without the usual reflex movements. Dr. Warner conducted an experiment in the courtroom during the trial which consisted in the application of a lighted end of a cigarette, which had been puffed to a glowing red, to the back of the right hand of the plaintiff without causing any apparent discomfort or evidence of sensation in the hand, an experiment which greatly impressed the learned trial judge and is not without effect upon us.

On the other hand, it appears from the report and testimony of Dr. Cazenavette and the testimony of Drs. J. K. Stone and Edmund McC. Connely, that the plaintiff, though admittedly able to endure considerable pain without flinching, was, in their opinions, only shamming, and the tests to which plaintiff was submitted by these physicians, particularly the blindfold test of Dr. Cazenavette, convinced these experts of that fact.

In Herzog's Medical Jurisprudence, on page 291, we read the following:

"When an accident is the proximate cause of a hysterical attack or seizure in a person in which hysteria can not be proved to have existed previously, and this attack results in a paralysis whether this may be called an organic paralysis or a hysterical paralysis, if it is such that it prevents the injured person from locomotion, or the power to raise an arm, or if it causes a loss of function of one of the special senses, it cannot be denied that the accident was the proximate cause of that loss, even though it may be claimed that the patient had inherited a predisposition to hysteria; for a person hysterically inclined may through some trauma, suffer an outbreak of what is called traumatic hysteria, although without that shock, such outbreak may never have occurred. Experts for the defendant, even though they may have to admit that a person suffering from traumatic hysteria is to all purposes paralyzed, may claim that his loss of function is due to the fact that he does not 'will' the paralyzed limb to function.

"A definition of hysterical paralysis or hysterical loss of function has been given in this way, 'The hysterical plaintiff says, "I can not," the expert for the defendant says, "He will not will," and the unbiased expert understanding hysteria thoroughly says, "he can not will." '

" * * * Hysteria is a disease, and the hysterical patient actually suffers the disabilities of paralysis, anesthesia, loss of power, or paroxysm, which he claims. Many physicians do not understand hysteria, and because they can not see any demonstrable evidences of organic disease, deny the existence of disease and claim that the hysterical patient is simulating or malingering. So too, many physicians think that a person suffering from hysteria, whether it be traumatic hysteria or not, must show some symptoms of hysteria which are easily recognizable. This is not so; many persons have suffered from hysteria who showed no outward signs of this disease."

In our opinion the decision of this case cannot be made with any profound confidence in the correctness of our conclusion. We are much impressed by the apparent lack of sensation in the plaintiff's arm and hand as demonstrated by the testimony of the experts and the experiments which were conducted in and out of the court. If the plaintiff is not suffering from hysterical paralysis and "will not will," he exhibited a most unusual degree of human fortitude which has admirably served his nefarious purpose. If, on the other hand, he is actually a victim of "functional disturbances of the brain, spinal cord or sympathic nervous system" and, therefore, "can not will," he is most unfortunate in not having been able to convince the majority of the medical experts of that fact, for the clear preponderance of the medical testimony is against him.

To our untutored minds the degree of control necessary to present as plausible an appearance of insensibility and of indifference to pain which the plaintiff in this case exhibited is such as would render the hypothesis of shamming almost untenable. But, as we have often said before in a matter of this

sort, we must rely upon the weight of the medical testimony, and if we err the responsibility must rest upon the members of the medical profession whose testimony has contributed to the dominant view.

This apparently was the attitude of our learned brother below, for in the trial of this case we find much evidence of judicial uncertainty.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.